UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RMI HOLDINGS, LLC,

    Plaintiff,

v.
                                    Case No. 5:19-cv-00153-TKW-MJF

ASPEN AMERICAN INSURANCE
COMPANY, et al.,

    Defendants.
_____/

### DEFENDANT ASPEN AMERICAN INSURANCE COMPANY'S
### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant/Counter-Plaintiff, ASPEN AMERICAN INSURANCE COMPANY, by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the Northern District of Florida, and files this memorandum of law in support of its motion for summary judgment, and further thereto would respectfully state as follows:

### STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

**The Parties**

The Plaintiff/Counter-Defendant RMI HOLDINGS, LLC (hereinafter "RMI") is a Georgia corporation. *See Plaintiff's Third Amended Complaint*, Docket Entry #31, at 1.

At all times relevant hereto, Defendant/Counter-Plaintiff ASPEN AMERICAN INSURANCE COMPANY (hereinafter "ASPEN") was represented by its underwriting and claims handling agent, Yachtinsure Limited (hereinafter "Yachtinsure"). (Deposition of Liam Talbot, dated December 11, 2019, a true and correct copy of which is attached hereto as Exhibit 1, at 4:17-

1

19).

In all matters relating to the formation of the disputed policy of marine insurance, Yachtinsure corresponded with ORM MERRITT ISLAND INC, agent for the Insured (hereinafter "ORM). (Ex. 1, at 16:16). ORM is an insurance agency that procures policies on behalf of either individual boat owners or retail agents representing individual boat owners. (Deposition of Peter Shaw, dated Dec. 13, 2019, a true and correct copy of which is attached hereto as Exhibit 2, at 8:12, and 14-16). For the policy at issue in this case, ORM acted as broker to USI INSURANCE SERVICES, LLC (hereinafter "USI"), which was the retail agent for the Insured. (Ex. 2, at 13:5-6).

**The Policy**

On or about November 15, 2017, the Plaintiff/Counter-Defendant RMI HOLDINGS, LLC (hereinafter "RMI") submitted to Defendant/Counter-Plaintiff ASPEN AMERICAN INSURANCE COMPANY (hereinafter "ASPEN") an application seeking to renew an existing policy of marine insurance. (Defendant's *Answer to Third Amended Complaint and Counterclaim for Declaratory Judgment*, ECF No. 34, at 6). As part of the renewal process, RMI was asked to complete a Hurricane Preparation Plan, a true and correct copy of which is attached hereto as Exhibit 3. (*See Plaintiff's Third Amended Complaint*, at 2.[1])

On or about November 21, 2017, ASPEN issued its Marine Insurance Policy No. ASU00322900 (hereinafter "the Policy), affording $190,000.00 in Hull & Machinery coverage on

---

[1] Plaintiff's Third Amended Complaint states: "…the hurricane preparation plan form was completed on November 17, 2017. (The hurricane preparation plan is incorrectly dated November 17, 2018.)" ECF No. 31, at 2. For the purposes of summary judgment, ASPEN will agree to stipulate that the Hurricane Preparation Plan attached hereto as Exhibit 3 was completed on November 17, 2017.

the 1999 43 ft vessel named "LEELANAU" (hereinafter "the Vessel") which was owned by RMI. (ECF No. 34, at 6). A true and correct copy of the Policy (including Declarations Page, policy language, and all policy endorsements) is attached hereto as Exhibit 4. The Policy incepted on November 23, 2017, and was set to expire one year later on November 23, 2018. (Ex. 4, at 7).

The Declarations Page included the Insured's address: 118 South Cherry Street in Ocilia, Georgia, 31774. (*See* Ex. 4, at 7). In addition, the Policy includes a "Georgia Amendatory Endorsement." (*Id*., at 3-4).

Item 15 of the Policy's Declarations Page, titled "**Special Conditions**," contains the following language: "**Subject to an updated Hurricane Preparation Plan being seen and agreed by underwriters within 7 days from inception**." (*Id.*, at 9) (emphasis in original).

On November 21, 2017, Yachtinsure sent an email to Peter Shaw of ORM, affirming that the Policy had been bound, and attaching all policy documents, including the Declarations Page and all endorsements. (Ex. 2, at 54:16). A true and correct copy of the aforesaid email is attached hereto as Exhibit 5. The email states that Underwriters require further information about the insured's Hurricane Preparation Plan, or HPP. This email states, in relevant part:

> Underwriters need more information on the HPP with regards to confirmation of the line material used and that in the event of a windstorm, the lines will be doubled. Please can you also confirm whether they have any alternative arrangements as per question 17.[2]

In other words, Underwriters required three additional pieces of information before the HPP could be approved: they wanted to know 1) what type of material the lines were made of, 2)

---

[2] Question 17 of the HPP asks: "What are your alternative plans in the event that the above plan becomes unlikely?" There is no response to this question on the HPP submitted by RMI. (*See* Ex. 3, at 2).

3

whether these lines would be doubled in the event of a hurricane, and 3) what alternative arrangements the Insured had in place in case the hurricane plan could not be performed.

**The Loss**

On or about October 18, 2018, during the term of the Policy, and while the Vessel was located at Port St. Joe Marina in Port St. Joe, Florida, the Vessel was damaged by Hurricane Michael. (ECF No. 34, at 8).

While the claim was being investigated, ASPEN issued a 30-day extension of the Policy. (Ex. 1, at 50:24-25). A true and correct copy of the 30-day extension is attached hereto as Exhibit 6.

During its investigation of the claim, Underwriters reviewed their files and determined that the required updated HPP had never been received. (Ex. 1, at 16:9-10). On October 15, 2018, Yachtinsure sent an email to Peter Shaw of ORM, advising that the updated HPP had never been received and approved by Underwriters. (*Id.*, at 38:23). A true and correct copy of the aforesaid email is attached hereto as Exhibit 7. On October 18, 2018, Mr. Shaw responded, stating "there appears to have been some confusion between the producing agent and myself," and that ultimately "the assured was never notified of the requirement and did not read his policy thoroughly enough to notice the requirement under Item 15…" A true and correct copy of Mr. Shaw's email is attached hereto as Exhibit 8.

Without providing an updated HPP, Underwriters were not in a position to agree to extend coverage for named and numbered windstorms. (Ex. 1, at 29:17-18). Following Hurricane Irma in September 2017, Underwriters had decided to impose tighter guidelines in terms of what they deemed to be an acceptable HPP. (*Id.*, at 14:20-15:12). These tighter guidelines included

confirmation by an insured of the line material used to secure the vessel during a hurricane, how many lines were to be used, and other information as well. (*Id.*, at 15:2-5). In the event of a named or numbered windstorm, Underwriters would expect the typical number of lines typically used to the secure the vessel to be doubled. (*Id.*, at 15:9-10).

During his deposition, D.A. Pope, owner of RMI, stated that he asked someone at the marina to check his vessel in preparation for Hurricane Irma. (Deposition of D.A. Pope, dated Feb. 26, 2019, a true and correct copy of which is attached hereto as Exhibit 9). Mr. Pope stated that he asked this person to

> …just go by and check the lines, roll up the Isinglass on top, and to keep it from catching any more wind than possible, and just look it over and make sure everything was okay, the lines were okay that type of thing.

*(Id.*, at 52:16-20). No other precautions were taken. (*Id.*). When asked how many lines were typically used to secure the vessel, Mr. Pope stated "six or eight." (*Id.*, 53:6). When asked how many lines were used to secure it prior to and during the passage of Hurricane Michael, Mr. Pope said it was secured with the typical six or eight lines, he did not know which. (*Id.*, 53:8). As such it is clear that the Insured was never made aware of what specific actions were required by Underwriters in preparation for a named or numbered windstorm.

## **MEMORANDUM OF LAW**

It is undisputed that RMI never submitted the updated HPP as required by Underwriters. Both the Declarations Page and the email communication sent by Yachtinsure to ORM on the day the Policy was bound indicate that the HPP which RMI had already provided was inadequate and that another HPP with more information was required. Yachtinsure directly notified ORM, RMI's agent, of the specific information needed before the HPP could be accepted: 1) what type of

5

material the lines were made of, 2) confirmation that these lines would be doubled in the event of a windstorm, and 3) what alternative arrangements the Insured had in place. The Policy required the disclosure of this information, without which there could be no coverage for named or numbered windstorms. ORM has admitted that it and USI failed in their respective duties as agents of the Insured to advise RMI of the requirement for an updated HPP.

## ARGUMENT

ASPEN clearly stated that an updated HPP had to be seen and agreed by Underwriters within seven days of the Policy's inception. The duty to provide this updated HPP can be construed as an express warranty, failing which there is no coverage for damage caused by named or numbered windstorms, the only type of coverage to which the HPP was relevant. Under Eleventh Circuit precedent, express warranties in marine insurance policies are strictly applied under federal admiralty law. In the alternative, if the duty to provide the updated HPP is interpreted as a condition precedent to coverage for named and numbered windstorms, then the substantive law applied to interpret the contract would be the law of the state where the Policy was delivered. As the Insured is a Georgia corporation, the Policy was delivered in Georgia, an under Georgia law, failure of a condition precedent releases an insurer from liability under the policy. Under either theory, there can be no coverage under the Policy for this loss.

1. **Summary Judgment is Proper Here Since No Material Facts Remain In Dispute**

Summary judgment is appropriate where there is no genuine issue or dispute remaining as to the material facts in a case. *See*, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In addition, the federal maritime law recognizes the particularly appropriate nature of summary judgment in resolving marine insurance coverage questions. *See, e.g., The Home Insurance Company v. Vernon*

*Holdings*, 1995 A.M.C. 369 (S.D. Fla. 1994); *Port Lynch, Inc. v. New England Int'l Assur. Of America*, 754 F.Supp. 816 (W.D. Wash. 1991). *See also, Talat Enterprises, Inc. v. Aetna Life & Cas. Co.*, 952 F.Supp. 773 (M.D. Fla. 1996) ("[T]he interpretation of an insurance contract question is a question of law which may be determined on summary judgment.") *Id.*, at 776.

An issue of fact is said to be "material" if it is something that might affect the outcome of the suit under the governing law. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A material fact is understood to be "genuine" only "if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Id.,* at 261, n. 2.

In opposing the motion for summary judgment filed by the Defendant herein, it is incumbent upon the Plaintiff to submit competent evidence which would be sufficient to satisfy that exact same standard of proof that would be required of it at the trial which would take place only if summary judgment is denied. 477 U.S. 242 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Id.*, at 252.

As is clear from the Statement of Material Facts in support of the instant motion for summary judgment, there can be no dispute regarding the fact that RMI never submitted the updated HPP as required. This information was material to the risk of hurricane damage because, following Hurricane Irma, Underwriters decided that more information and precautions were necessary when preparing for a hurricane, and Underwriters could not offer coverage for named and windstorms without the updated HPP. The fact that an updated HPP was required was clearly communicated on the Declarations Page, and directly via email to Mr. Shaw of ORM as well. When Yachtinsure informed ORM that the HPP had never been provided, Mr. Shaw admitted that

7

he and the "producing broker" (referring to USI) had failed to convey the requirement to the Insured. (*See* Ex. 8).

1. **The Policy Is Governed By Federal Admiralty Law And Georgia Law**

In *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 315, 75 S.Ct. 368, 99 L.Ed. 337 (1955), the Supreme Court held that state law should be applied to interpret a maritime insurance contract where no judicially established federal admiralty rule exists on the issue. Such a rule regarding express warranties was fashioned by the Eleventh Circuit in 1988, wherein it held that "admiralty law requires the strict construction of express warranties in marine insurance contracts" and "breach of the express warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss." *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1367 (11th Cir. 1988). The federal admiralty rule requiring the strict application of express warranties in contracts of marine insurance was recently affirmed by the Southern District of Florida in the case of *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters, LLC*, 396 F. Supp. 3d 1170, 1176 (S.D. Fla. 2019), wherein the court stated:

> In sum, the Eleventh Circuit has fashioned an entrenched federal rule of admiralty: express warranties in maritime insurance contracts *must* be strictly construed in the absence of some limiting provision in the contract. This rule squares with the holding in *Wilburn Boat*, which left room for development of the law and, at least as it relates to express warranties, the Eleventh Circuit has heeded the call.

Where there is no entrenched federal rule of admiralty, state law would apply. 348 U.S. at 315. In the absence of a choice of law clause, a contract dispute is governed by the laws of the state in which the contract was delivered. *See Pastor v. Union Cent. Life Ins. Co.*, 184 F.Supp.2d 1301, 1305 (S.D. Fla. 2002). As indicated on the Declarations Page, the Policy was delivered to the Insured at 118 South Cherry Street in Ocilia, Georgia, 31774. (*See* Ex. 4, at 7). As such,

Georgia law applies in the absence of an entrenched rule of federal admiralty law.

    2. **Federal Admiralty Law Calls For the Strict Application of Warranties In Marine Insurance Policies**

The Policy is one of marine insurance and is therefore governed by federal admiralty law where there is, or should be, an established federal admiralty rule. *See Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1489 (11th Cir. 1986); *All Underwriters v. Weisberg*, 222 F.3d 1309, 1312 (11th Cir. 2000) ("Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law."); *Lamadrid v. Nat'l Union Fire Ins. Co.*, 567 F. App'x 695, 699 (11th Cir. 2014) (noting that federal maritime law applies to marine insurance contracts); *Home Ins. Co. v. Vernon Holdings*, 1995 AMC 369, 372 (S.D. Fla. May 2, 1994) (in marine insurance context, holding that "[u]nder Eleventh Circuit precedent, federal admiralty law, not state law, does control"); *La Reunion Francaise*, 122 F. Supp. 2d at 1334 (explaining that in marine insurance disputes, the "general rule" is to apply a federally established admiralty law, if one exists).

The Eleventh Circuit has recognized that federal admiralty law requires strict construction of express warranties, stating:

> [A]dmiralty law requires the strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss.

*Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366 (11th Cir. 1988).

In *Cooke's*, the Eleventh Circuit cited and relied on multiple decisions involving varied warranties in marine insurance policies from several circuits, including: *Aguirre v. Citizens Cas. Co. of New York*, 441 F.2d 141, 143 (5th Cir. 1971) (express seaworthiness warranty); *Home Ins.*

9

*Co. v. Ciconett*, 179 F.2d 892, 894 (6th Cir. 1950) (watchman warranty); *Canton Ins. Office, Ltd. v. Indep. Transp. Co.*, 217 F. 213, 217 (9th Cir. 1914) (navigation and passenger service warranties); *Capital Coastal Corp. v. Hartford Fire Ins. Co.*, 378 F. Supp. 163, 172 (E.D. Va. 1974) (a named operator warranty). Subsequent opinions from and within the Eleventh Circuit are in accord with *Cooke's*. *See, e.g., Hilton Oil Transp. v. Jonas*, 75 F.3d 627, 630 (11th Cir. 1996) ("In the absence of a 'held covered' clause '[a] breach of warranty discharges the insurer from liability and deprives the assured from recourse against the insurer, whether the loss can be traced to the breach or not and even though such breach was innocently or inadvertently committed by the assured."); *AXA Global Risks (UK), Ltd. v. Webb*, 2000 AMC 2679, 2681 (M.D. Fla. July 23, 2000) (enforcing express lay-up warranty under strict maritime standard).

2. **RMI's Failure To Provide The Updated HPP Within Seven Days Of the Policy's Inception Was A Breach of Warranty, Meaning There Can Be No Coverage For Named Or Numbered Windstorms**

Federal admiralty law recognizes that "warranties represent a promise by the insured to do or not to do something the insurer considers significant to its risk of liability under an insurance contract." *Commercial Union Ins. Co. v. Flagship. Marine Servs., Inc.*, 190 F.3d 26, 31 (2d Cir. 1999).

It is undisputed that Underwriters considered an updated HPP to be significant to the risk of insuring the vessel. Item 15 of the Declarations Page states: "**[s]ubject to an updated Hurricane Preparation Plan being seen and agreed by underwriters within 7 days from inception**." (Ex. 4, at 9). In addition, Underwriters advised ORM specifically what information was needed in the updated HPP. ORM was RMI's agent. *See Certain Underwriters at Lloyds, London v. Giroire*, 27 F. Supp. 2d 1306, 1313 (S.D. Fla. 1998) ("the general rule in the context of

marine insurance [is] that a broker acts as agent for the insured.")

In his deposition, Mr. Talbot, Plaintiff's Underwriter at Yachtinsure, stated that such information was significant to Underwriters in their calculation of the risk to insuring vessels against damage by named and numbered windstorms. Following Hurricane Irma, Underwriters decided that more information and precautions were necessary when preparing for a hurricane, and Underwriters could not offer coverage for named and windstorms without the updated HPP. Nor did RMI ever direct the marina the double the lines on the vessel in preparation for Hurricane Michael, as required by Underwriters. RMI's failure to submit the HPP and double the lines were breaches of an express warranty, and as such, there can be no coverage for the loss.

3. **In The Alternative, An Updated HPP Was A Condition Precedent to Coverage For Named And Numbered Windstorms**

In Georgia, a party must perform a condition precedent in order for the contract to become binding on the other party. *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1323–24 (N.D. Ga. 2014) (citing O.C.G.A. § 13–3–4). Put another way, "[a] condition precedent is one which must be performed before any right to be created thereby accrues." *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.,* 103 F.Supp.2d 1322, 1335 (N.D.Ga.2000) (quoting *Wolverine Ins. Co. v. Sorrough,* 122 Ga.App. 556, 177 S.E.2d 819, 822 (1970)). Parties can create conditions precedent "by language such as 'on condition that,' 'if' and 'provided,' or by explicit statements that future events are to be construed as conditions precedent." *Choate Constr. Co. v. Ideal Elec. Contractors, Inc.,* 246 Ga.App. 626, 541 S.E.2d 435, 438 (2000).

Once a condition precedent has been established, the burden of proving that the condition precedent has been satisfied falls on the plaintiff. *See Jackson v. Seaboard Coast Line R.R. Co.,* 678 F.2d 992, 1010 (11th Cir.1982).

11

In an insurance contract, failure by an insured to satisfy a condition precedent is complete bar to coverage. "An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract." *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 707 S.E.2d 369, 371 (Ga. 2011); *Hunnicutt v. S. Farm Bureau Life Ins. Co.*, 351 S.E.2d 638, 640 (Ga. 1987).

Item 15 of the Declarations Page included the words "**subject to**," clearly indicating that the full coverage provided by the Policy was conditioned on "**an updated Hurricane Preparation Plan being seen and agreed by underwriters within 7 days from inception**." (Ex. 4, at 9). An updated HPP was only relevant to coverage for named or numbered windstorm, thus it is a condition precedent only for coverage of damage caused by named or numbered windstorms.

At trial, it would be RMI's burden to demonstrate that the condition precedent had been met. *Jackson v. Seaboard Coast Line R.R. Co.,* 678 F.2d 992, 1010 (11th Cir. 1982). RMI cannot show that it submitted an updated HPP to Underwriters within 7 days of the Policy's inception because ASPEN never received an updated HPP. In fact, ORM admitted that it had failed to make the Insured aware of the requirement, and thus the Insured never provided an updated HPP. Nor did RMI ever direct the marina the double the lines on the vessel in preparation for Hurricane Michael, as Underwriters had required.

## **CONCLUSION**

For the reasons stated above, this Court should award summary judgment to ASPEN on the sole count in its Counterclaim. Underwriters clearly stated in the Declarations Page and communicated to ORM, the Insured's agent, the an updated HPP was required. This updated HPP was never received, and as such, there can be no coverage for damage caused by named or

numbered windstorms.

WHEREFORE, Defendant/Counter-Plaintiff ASPEN AMERICAN INSURANCE COMPANY moves this Court for an Order granting judgment as a matter of law in its favor against Plaintiff RMI HOLDINGS, LLC, ruling that RMI breached the express warranty in the Policy to provide an updated HPP within 7 days of inception, or in the alternative, that Underwriters' receipt and agreement of an updated HPP within 7 days of inception was a condition precedent to coverage, meaning that that there can be no coverage under the Policy for damage caused by named an numbered windstorms, along with all such other and further relief as the Court may deem just and proper in the premises.

Dated: May 25, 2020
Fort Lauderdale, Florida

                Respectfully submitted,

                GOLDMAN & HELLMAN
                Attorneys for Plaintiff
                8751 W. Broward Boulevard
                Suite 404
                Fort Lauderdale, FL 33324
                Tel (954) 356-0460
                Fax (954) 832-0878

                By: /s/ Steven E. Goldman
                STEVEN E. GOLDMAN, ESQ.
                FLA. BAR. NO. 345210

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that per the requirements of Local Rule 56.1(B), the foregoing memorandum of law contains 3,830 words.

Dated:       May 25, 2020
                  Fort Lauderdale, Florida

                                          Respectfully submitted,

                                          GOLDMAN & HELLMAN
                                          Attorneys for Plaintiff
                                          8751 W. Broward Boulevard
                                          Suite 404
                                          Fort Lauderdale, FL 33324
                                          Tel (954) 356-0460
                                          Fax (954) 832-0878

                                          By: /s/ Steven E. Goldman
                                          STEVEN E. GOLDMAN, ESQ.
                                          FLA. BAR. NO. 345210

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 25, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all counsel of record.

>GOLDMAN & HELLMAN
>Attorneys for Defendant/Counter-Plaintiff
>8751 W. Broward Boulevard
>Suite 404
>Fort Lauderdale, FL 33324
>Tel (954) 356-0460
>Fax (954) 832-0878
>
>By: /s/ Steven E. Goldman
>STEVEN E. GOLDMAN, ESQ.
>FLA. BAR. NO. 345210