UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RMI HOLDINGS, LLC,

    Plaintiff,

v.                                        Case No. 5:19-cv-00153-TKW-MJF

ASPEN AMERICAN INSURANCE
COMPANY, et al.,

    Defendants.
_____/

**DEFENDANT ASPEN AMERICAN INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant/Counter-Plaintiff, ASPEN AMERICAN INSURANCE COMPANY, by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the Northern District of Florida, and submits this its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment [Docket Entry #51], and further thereto would respectfully states as follows:

**BASIC SUMMARY OF FACTS IN DISPUTE**

Defendant ASPEN AMERICAN INSURANCE COMPANY's Policy ASU00322900 (hereinafter "the Policy") never provided coverage for damage caused by named or numbered windstorms because the Insured failed to provide the required updated Hurricane Preparation Plan ("hereinafter HPP"). *Deposition of Liam Talbot*, dated Dec. 11, 2019, previously filed as DE #48-1, at 29:17-18. The Declarations Page clearly stated that the updated HPP had to be "seen and agreed to by Underwriters within 7 days of inception." DE #48-4, at 7. Yachtinsure, Ltd.

1

(hereinafter "Yachtinsure") emailed Peter Shaw od ORM MERRITT ISLAND, INC. (hereinafter "ORM") and explicitly advised what information Underwriters needed before the HPP could be approved. DE #48-5.

Defendant ASPEN AMERICAN INSURANCE COMPANY (hereinafter "ASPEN") does not dispute that it never cancelled the Policy. In fact, the Policy was renewed while the claim was being investigated. *See* 30-day extension, previously filed as DE #48-6. ASPEN does not dispute that it has not returned any premium paid under the Policy. There is no premium to return to the Insured because there is no separate premium charged for windstorm coverage. DE #48-1, at 25:24-25.

ORM has admitted that it did not inform USI about what specific information was needed as part of the updated HPP. *See Defendant, ORM MERRITT ISLAND, INC's Motion for Summary Judgment and Supporting Memorandum of Law*, DE #49, at 6.

1. **Legal Standard**

Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law. *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp.2d 1348, 1358 (M.D. Fla. 2001) (citing *Talat Enter., Inc. v. Aetna Life & Cas.*, 952 F. Supp. 773 (M.D. Fla. 1996)). Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices." (citation omitted). Therefore, the district court will "make no credibility determinations or choose between conflicting testimony,

but instead [will] accept [the non-moving party's] version of the facts drawing all justifiable inferences in [the non-movant's] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). Notwithstanding this inference, "[t]here is [still] no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349.

2. **Georgia Has The Most Significant Relationship To The Transaction**

Plaintiff mistakenly asserts that, per the Florida state law doctrine of *lex loci contractus*, Florida law would govern the interpretation of the Policy. *See* DE #51, at 4. Plaintiff's reasoning is flawed from the start. As this Policy is a maritime contract, federal admiralty law applies. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23, 125 S. Ct. 385, 392–93, 160 L. Ed. 2d 283 (2004) ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation.) Federal admiralty law applies even where, as here, the case was brought pursuant to the court's diversity jurisdiction. *See id.*

Because this case involves interpretation of a marine insurance contract, the choice of law analysis to be applied is based on the Second Restatement of Conflicts of Law, Section 188. *Cont'l Cas. Co. v. Reese*, No. 8:05CV50 T24TBM, 2006 WL 1992373, at *3 (M.D. Fla. July 14, 2006) (citing *Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377, 1381 (11th Cir. 2006)). *See also Isabella Marine Holding, LLC v. Purcell*, No. 15-10168-CIV, 2017 WL 3392498, at *3 (S.D. Fla. Aug. 8, 2017), *report and recommendation adopted sub nom. Isabella Marine Holdings, LLC v. Purcell*, No. 15-10168-CIV, 2017 WL 10753131 (S.D. Fla. Aug. 23, 2017) ("In accordance with these principles, the Eleventh Circuit performs a choice-of-law analysis in maritime contract cases based on the Second Restatement of Conflicts of Law, Section 188 [….] a court must determine

3

which forum has the most significant relationship with the transaction at issue.") (internal citations omitted); *Sagaan Developments & Trading Ltd. v. Quail Cruises Ship Mgmt.*, No. 11-23873-CIV, 2013 WL 2250793, at *4 (S.D. Fla. May 22, 2013) ("In an admiralty contracts case the choice of law analysis turns on which sovereign entity has the most significant relationship with the transaction at issue.) (internal citations omitted); *Great Lakes Reinsurance (UK) PLC v. Morales*, No. 09-20814-CIV, 2009 WL 10718050, at *4 (S.D. Fla. Oct. 2, 2009) ("The choice of law analysis in maritime contract cases is based on the Second Restatement of Conflicts of Law, Section 188.").

In conducting the choice of law analysis based on the Restatement, a court must determine which state has the "most significant relationship" with the transaction at issue. 446 F.3d at 1382. The factors to be considered in this analysis are "(a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the locus of the subject matter of the contract; and (e) the domicile of the parties." *Id.* Each of these factors is addressed below in turn.

### a) The Place of Contracting

Contrary to the assertion by Plaintiff's counsel, the fact that ORM received policy documents in Florida is not determinative of where the policy was executed. *See Plaintiff's Motion for Summary Judgment Against Aspen American Insurance Company*, DE #51, at 4 ("Aspen delivered the policy and confirmation of coverage to ORM in Florida.") ORM was merely the middle-man, and RMI does not dispute that it eventually received the Policy. In addition, RMI's Georgia address is on the Declarations Page. Delivery to Georgia, even indirectly, suggests that Georgia law should apply.

The case *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Brickyard Vessels, Inc.*, illustrates this point. The Brickyard case involved a dispute over a maritime contract which had been issued

4

to a Virginia corporation. No. 1:14CV921 JCC/IDD, 2014 WL 5684585, at *1 (E.D. Va. Nov. 4, 2014). The policy had been issued by the insurer and then sent to the insured's agent in Florida, who then sent it to the insured in Virginia. *Id.*, at *4. The court determined that the "most significant relationship test" should be used to determine which state's law would be used to interpret the contract since it was a federal admiralty case. *Id*. As to where the contract was formed, the insurer argued that Florida law should apply because the insurer delivered the policy to the insured's agent in Florida. *Id.* The Court rejected this argument, rightly recognizing that delivery merely went through Florida to its intended destination: "[g]iven that [the insured's] address is on the face of the Policy, and that the Policy was ultimately delivered to that Virginia address – even if it was delivered in a round-about way – suggests Virginia law governs the substantive claims." *Id.* Thus, the first factor of the "significant relationship" test favors application of Georgia law.

Even if the Court were to refer to cases applying *lex loci contractus* as instructive, Plaintiff's counsel completely misapplies it. Under that doctrine, in the absence of a choice of law provision in the policy, the governing law is "the law of the state in which the contract is made, i.e., where the last act necessary to complete the contract is done." *Fioretti v. Mass. Gen. Life Ins. Co.,* 53 F.3d 1228, 1235 (11th Cir.1995). Plaintiff's memorandum of law fails to cite a single case in support of its implicit proposition that receipt of a policy by an insured's agent is the "last act necessary" to complete a contract, and undersigned counsel was unable to locate any. If the Court were to correctly apply the doctrine of *lex loci contractus* (although it should not do so in this admiralty case), it would result in the application of English law, an absurd result which it is clear RMI does not intend. This is because the last act necessary to complete the contract actually occurred in England, when Yachtinsure advised ORM that the Policy was bound.

The case of *Granite State Ins. Co. v. Am. Bldg. Materials, Inc.* involved a New Hampshire insurance company with underwriting agents in Massachusetts, who insured a Florida corporation represented by Florida insurance agents. No. 8:10-CV-1542-T-24, 2011 WL 6025655, at *7 (M.D. Fla. Dec. 5, 2011), *aff'd*, 504 F. App'x 815 (11th Cir. 2013). The court recognized that the doctrine of *lex loci contractus* would determine which state's law governed the commercial general liability policy at issue. *Id.*, at *4. The court began its analysis by stating that "[d]etermining where the last act necessary to complete the contract occurred is fact-intensive." *Id.* (quoting *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.,* 363 F.3d 1089, 1092–93 (11th Cir.2004)). The court stated that "[t]he last act necessary to complete a contract is the offeree's communication of acceptance to the offeror." *Id.* at 1093. The court plotted the contract development as follows:

> In each year, the agents for [the insured] (who are both located in Florida), received a quote for the policies from the managing general underwriter for the Insurer, VMGU (who is located in Massachusetts). Next, [the insured's] agent emailed VMGU an *offer* to purchase the insurance at the prices quoted, by requesting that coverage be bound. VMGU then *accepted* that offer on behalf of the Insurer and issued a binder for the coverage from its offices in Massachusetts. Each year, after issuing the binder from its offices in Massachusetts, VMGU itself completed the information on the declarations pages of the policies, generated the policies, and emailed electronic versions of the policies to [the insured's] agents in Florida.

On this record, the court determined that the last act necessary to form the insurance contract occurred when the insurer's agent in Massachusetts bound coverage, and as such Massachusetts law would apply. *See also Sun Capital Partners, Inc. v. Twin City Fire Ins. Co., Inc* , No. 12-CV-81397-KAM, 2015 WL 4648617, at *5 (S.D. Fla. Aug. 5, 2015) (applying the Florida doctrine of *lex loci contractus* and stating: "…the Court concludes that the last act necessary to create an insurance contract occurred in New York when the insurers' agents accepted Plaintiff's agent formal offer to bind coverage.")

6

Were this Court to apply the reasoning of of *lex loci contractus* to the facts of the present matter, then it is clear that the Policy was executed in England, not in Florida. Yachtinsure's email to ORM on November 21, 2017 communicated that coverage was bound. *See* DE #48-5. Id. Yachtinsure, ASPEN's underwriting and claims handling agent, is located in England. *Id.* This email was the "last act necessary" to complete the contract.

In short, there is simply no reasonable interpretation of relevant caselaw where it can be argued that the Policy was "delivered" in Florida. Per the "significant relationship test" as applied in federal admiralty cases, the Policy was delivered, albeit in a roundabout way, to the insured in Georgia. *See* 2014 WL 5684585 at *4, *discussed supra*. Even if this Court were to apply the *lex loci contractus* caselaw to the first factor of the "significant relationship test," then it is obvious that the Policy was executed in England.

### b) The Place of Negotiation

The Policy was negotiated equally in England and Florida between Yachtinsure and ORM, thus this second factor cannot favor the application of Florida law any more than it can favor the application of English law.

### c) The Place of Performance

Had the Insured's claim been covered by the Policy, ASPEN would have issued payment to the Insured in Georgia. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Brickyard Vessels*, Inc., No. 1:14CV921 JCC/IDD, 2014 WL 5684585, at *4 (E.D. Va. Nov. 4, 2014) (holding that place of performance was Virginia, where insured resided, rather than Florida where vessel collision occurred, because insurance payments "would necessarily be delivered to [insured] at its principal place of business in Herndon, Virginia, the address listed on the Policy.") Thus, the third

7

factor favors the application of Georgia law rather than Florida law.

### d) The Locus of the Subject Matter of the Contract

The vessel was located in Florida when the loss occurred. DE #48, at 4. But, the vessel could just as likely have been anywhere within limits of the Policy's navigational limits warranty, which includes the "waters of the Gulf of Mexico, Florida and Bahamas (excluding Cuba) not exceeding 250 miles offshores." DE #48-4, at 7.

### e) The Domicile of the Parties

No Florida resident is a party to this contract. The parties to the Policy are ASPEN and RMI. ASPEN is incorporated under the laws of the state of Texas with its principal place of business in Connecticut, and RMI is a Georgia corporation. *See* DE #24, at 5; DE #21, at 1. Thus this factor weighs in favor of applying Georgia law over Florida law.

Georgia law should be applied to this matter because a state has an interest in protecting its own citizens. *See Aqua–Marine Constructors, Inc. v. Banks,* 110 F.3d 663, 670 (9th Cir.1997), *cert. denied,* 522 U.S. 933, 118 S.Ct. 339, 139 L.Ed.2d 263 (1997). In that case, an Oregon resident and owner of a barge sued in Oregon to recover under a performance bond and the court considered which state's law should apply. In *Aqua Marina*, an Oregon resident and owner of a barge sued in Oregon to recover under a performance bond and the court considered which state's law should apply under the admiralty law "most significant relationship" test. The court found that California, Oregon, Washington, and Costa Rica all had significant contacts with the performance bond: the bond was issued by a Costa Rican resident, the bond was executed in California, the party for whose benefit the bond was executed was an Oregon resident, and the vessel covered by the performance bond was to be redelivered in Washington. 110 F.3d at 674–

75. The court concluded that Oregon had a considerably greater interest in the application of its law because of its strong interest in the protection of its citizens against the insolvency of a foreign insurer. In regards to the other locales, the court noted that no citizen of Washington was a party to or beneficiary of the contract at issue, California's citizen elected not to defend himself and default judgment was entered against him, and Costa Rica's citizen never argued that the law of its state should apply. *Id.* The only parties to the Policy are residents of Texas/Connecticut and Georgia. As the Insured is a Georgia resident, the law of the state of Georgia should be applied to protect RMI, a Georgia corporation.

### 3. No Part of the Policy Was Ever Cancelled

Under Georgia insurance law, a policy is not canceled when it lapses or expires by its own terms. *Progressive Preferred Ins. Co. v. Brown*, 261 Ga. 837, 413 S.E.2d 430 (1992); *Guideone Life Ins. Co. v. Ward*, 275 Ga. App. 1, 619 S.E.2d 723 (2005); *Goodley v. Fireman's Fund American Life Ins. Co.*, 173 Ga. App. 277, 326 S.E.2d 7 (1985) ("Inasmuch as the expiration or lapse of a policy does not constitute a cancellation, OCGA § 33–24–44 is inapplicable….")

Such is the case here where ASPEN never cancelled the Policy nor any part of the Policy; indeed, the Policy was renewed for 30 days after the claim was submitted! *See* DE #48, at 4; DE #48-6. The lack of coverage for windstorms is more akin to a lapse or expiration by its own terms, because the Declarations Page clearly stated that an updated HPP had to be seen and agreed to by Underwriters within seven days of the Policy's inception. DE #48-4, at 9. The Insured failed to provide the updated HPP, thus coverage for named or numbered windstorms which would otherwise have been provided was allowed to lapse. Because the Policy was never cancelled, it cannot be said that ASPEN failed to comply with Georgia state law on cancellation or the Policy's

Georgia Amendatory endorsement regarding cancellation.

## CONCLUSION

For the reasons stated above, it is clear that summary judgment for RMI should be denied. In the first place, RMI's assertion that Florida law governs misstates the choice of law analysis for an admiralty case. Even though this case was brought pursuant to this Court's diversity jurisdiction, the fact remains that the parties are disputing their rights and liabilities under a marine insurance contract. A case involving a maritime contract requires the application of the federal admiralty "most significant relationship" test. Under this test, the state with the most significant relationship to the transaction is Georgia: the policy was delivered to the Insured there (going through ORM was irrelevant), performance would have occurred in Georgia, the Insured is Georgia corporation, and the State of Georgia has an interest in protecting its citizens with its own insurance law.

Per Georgia insurance law, the Policy was never cancelled. Rather, the Insured allowed coverage for named and numbered windstorms to lapse when, by the terms of the Policy itself, RMI failed to provide an updated HPP to Underwriters within seven days of the Policy's inception.

WHEREFORE, Defendant/Counter-Plaintiff ASPEN AMERICAN INSURANCE COMPANY respectfully urges the Court to deny RMI HOLDING, LLC's Motion for Summary Judgment, and to issue all such other and further relief as the Court may deem just and proper in the premises.

Dated:	June 15, 2020
	Fort Lauderdale, Florida

                Respectfully submitted,

                GOLDMAN & HELLMAN
                Attorneys for Plaintiff
                8751 W. Broward Boulevard
                Suite 404
                Fort Lauderdale, FL 33324
                Tel (954) 356-0460
                Fax (954) 832-0878

                <u>By:</u> <u>/s/ Steven E. Goldman</u>
                STEVEN E. GOLDMAN, ESQ.
                FLA. BAR. NO. 345210

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that per the requirements of Local Rule 56.1(E), the foregoing memorandum of law contains 2,967 words.

Dated:      June 15, 2020
                Fort Lauderdale, Florida

                                      Respectfully submitted,

                                      GOLDMAN & HELLMAN
                                      Attorneys for Plaintiff
                                      8751 W. Broward Boulevard
                                      Suite 404
                                      Fort Lauderdale, FL 33324
                                      Tel (954) 356-0460
                                      Fax (954) 832-0878

                                      By: /s/ Steven E. Goldman
                                      STEVEN E. GOLDMAN, ESQ.
                                      FLA. BAR. NO. 345210

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 15, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all counsel of record.

        GOLDMAN & HELLMAN
        Attorneys for Defendant/Counter-Plaintiff
        8751 W. Broward Boulevard
        Suite 404
        Fort Lauderdale, FL 33324
        Tel (954) 356-0460
        Fax (954) 832-0878

        By: /s/ Steven E. Goldman
        STEVEN E. GOLDMAN, ESQ.
        FLA. BAR. NO. 345210